648

[*Crim.* No. 9052. Second Dist., Div. One. Dec. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. SAM HER-
MAN HOSTETTER, Defendant and Appellant.

Sam Herman Hostetter, in pro. per., and Albert Flaxman,
under appointment by the District Court of Appeal, for De-
fendant and Appellant.

Stanley Mosk, Attorney General, William E. James, As-
sistant Attorney General, and C. Anthony Collins, Deputy
Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of unlawfully sel-
ling heroin. He denies an allegation of the indictment that he
had been convicted previously of violating section 11500 of
the Health and Safety Code. In a jury trial he was con-

victed; and the allegation of prior convictions was found to be true. He appeals from the judgment.

Appellant contends that the evidence was insufficient to support the judgment; and that the deputy district attorney was guilty of misconduct.

■ Deputy Sheriff Reade, who was assigned to the undercover narcotics detail, testified that: On July 27, 1961, about 10:15 a.m., he and one Paul Hald, a police informant, went in an automobile to a place on Elizabeth Street in Monterey Park which was across the street from defendant's home. While he (deputy) remained in the parked automobile, Hald went into defendant's house. About 10 minutes later, Hald appeared in the yard of that address and signalled to the deputy, who then went with Hald into defendant's house. Hald introduced the deputy to defendant. Another man and the defendant's wife were also in the house. On the table in the living room, the deputy saw approximately 10 capsules which contained a yellowish substance. Also on the table, he saw an eye dropper and a hypodermic needle. The defendant said that the yellow substance did not appear to be heroin, but that is what it was. The deputy asked defendant how much he wanted for a gram. He replied, ''Twenty dollars.'' The deputy handed $20 to defendant and picked up 10 capsules from the table, and put them in his pocket. Defendant's wife, who was in the front room, said something to the effect that she would be willing to deal with Hald when defendant was not there. After leaving that house with the capsules, the deputy proceeded in his automobile to the sheriff's station. When he was about 2 blocks from defendant's house he slowed his automobile so that two surveillant officers could catch up with him. Then he showed the capsules to the other officers, by holding up the capsules which were in a cellophane container. At the sheriff's station, the capsules were marked for identification, sealed in an envelope, and transferred to the laboratory. The capsules which are in the envelope, marked Exhibit 1, are the capsules that he received from the defendant.

Deputy Sheriff Thornberg, who was assigned to work with Deputy Reade, testified that: On July 27, 1961, about 9:15 a.m., at the sheriff's station, he searched Hald and did not find any narcotic on him. Then Deputy Thornberg (witness) and Deputy Guiterrez, who were in an automobile, followed Deputy Reade and Hald to the location across the street from defendant's house. He (witness) parked his automobile near-

by and saw Hald leave Deputy Reade's automobile and go into the driveway at defendant's house. About five minutes later, he (witness) saw Deputy Reade go into the driveway. About 10 minutes thereafter Reade and Hald left the house, entered their automobile, and drove away. He (witness) saw the capsules within the cellophane wrapping when Deputy Reade held them up in the window of his automobile while Deputy Thornberg's automobile was passing the Reade automobile on the way to the sheriff's station. He (witness) saw the capsules at the station when they were placed in an envelope and delivered to the laboratory.

It was established that the capsules (Exhibit 1) contained heroin.

There was sufficient evidence to prove that defendant had been convicted previously as alleged in the indictment.

Defendant testified that: On July 27, 1961, about 10:30 a.m., Hald came into his house and said that he wanted to bring a friend in. Hald then stood in the doorway and motioned to someone who thereafter entered the house. Hald introduced the person as "Bob," and said that the person "just got out of the joint" (meaning penitentiary), and wanted to know whether defendant had "anything." He (defendant) assumed that he meant any narcotics. Defendant replied that he did not have anything. The person who came into the house with Hald was Deputy Reade. Reade said that he had to "take a nalene or something that evening." The two men were there about ten minutes. There was no capsule, narcotic, hypodermic needle, or addict's kit on the table. He did not give Reade any capsule or narcotic. He did not receive any money from Reade. Mrs. Hostetter (defendant's wife) was not in the front room. She was in bed in the bedroom—she had returned from a hospital on the preceding day after giving birth to a child. There was no conversation between her and Reade.

On cross-examination, defendant said that he had been convicted of a felony, "a marijuana felony." He had known Hald a short time—since June 1961 (the preceding month) when defendant went to jail. About three weeks after defendant came home from jail, Hald started coming to defendant's house and bringing narcotics there. Defendant called the police station and reported that Hald had narcotics. The police arrested Hald.

Mrs. Hostetter, wife of defendant, testified that on said July 25, about 10:25 a.m., she was in bed in the bedroom of her home; she did not see, or have a conversation with, Deputy

Reade on that day; she did not say or in any way indicate to him that she would sell any narcotic.

According to a statement in appellant's brief, he was arrested on or about October 4, 1961.

Appellant's contention that the evidence was insufficient to support the judgment is not sustainable. Deputy Sheriff Reade testified, as above stated, that he paid $20 to defendant for the capsules of heroin. The defendant denied that he received any money from the deputy, that any capsule was on the table, and that he gave or delivered any narcotic to the deputy. The jury resolved the conflict in the evidence in favor of the prosecution. There was ample evidence to support the verdict and judgment.

Appellant's further contention that the deputy district attorney was guilty of misconduct is not sustainable. This contention is based upon questions asked by the deputy regarding defendant's prior conviction of a felony. As above shown, the defendant had denied the allegation of the indictment that he had been convicted previously of a felony. On cross-examination of defendant, the deputy asked whether defendant had been convicted of a felony. He replied in the affirmative. The deputy asked what felony it was. He replied that it was a marijuana felony. The deputy asked if it was three counts of sale. He replied, "No sir, it was give away, sell, furnish or give away." The deputy asked if the judgment was pronounced on November 21, 1956, and if he served a term of imprisonment in the state prison therefor. He replied in the affirmative. The deputy said: "That's a felony that you denied having previously committed, is that right?" He replied: "You didn't specify yourself, sir. I believe you said, 'Sale of narcotics'; and on the specification here, you said, 'Sales of heroin.'" The deputy said: "Well, anyway that's a felony you denied, is that right?" He replied in the affirmative. The deputy was not guilty of misconduct.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1964.